**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THE BOARD OF TRUSTEES OF THE
TRUCKING EMPLOYEES OF NORTH
JERSEY WELFARE FUND, INC., et al.

                Plaintiffs,

v.

CALIBER AUTO TRANSFER, INC., et al.,

                Defendants.

Civ. No. 09-6447 (DRD)

**O P I N I O N**

*Appearances by:*

COHEN, LEDER, MONTALBANO & GROSSMAN, LLC
by: David Grossman, Esq.
Paul Allen Montalbano, Esq.
1700 Galloping Hill Road
Kenilworth, NJ 07033

    *Attorneys for Plaintiffs,*

MARTIN, GUNN & MARTIN
by: William J. Martin, Esq.
216 Haddon Avenue, Suite 420
Westmont, NJ 08108

    *Attorneys for Defendants.*

**DEBEVOISE, Senior District Judge**

      Plaintiffs, the Board of Trustees of the Trucking Employees of North Jersey Welfare

Fund, Inc. ("Welfare Fund"), the Board of Trustees of the Trucking Employees of North Jersey

Welfare Fund, Inc.-Pension Fund ("Pension Fund"), and Local 560, an affiliate of the

International Brotherhood of Teamsters ("Local 560"), filed the Complaint on December 22, 2009, against Defendants, Caliber Auto Transfer, Inc. ("Caliber Auto Transfer"); a group of Corporate Defendants[1] who are allegedly alter egos of Caliber Auto Transfer; and a group of Individual Defendants[2] who allegedly controlled Caliber Auto Transfer and the Corporate Defendants.

This is an action to recover various obligations incurred by Caliber Auto Transfer, a company that transports automobiles and container freight, under a collective bargaining agreement with Local 560. The Complaint requests unpaid wages owed to Local 560 bargaining unit employees pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; delinquent employee benefit contributions owed to the Welfare and Pension Funds, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.; and withdrawal liability calculated in accordance with the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381, et seq., incurred by Caliber Auto Transfer when it withdrew from the Pension Fund on July 31, 2007. The Complaint alleges generally that Caliber Auto Transfer was a façade corporation, created by the group of Corporate and Individual Defendants as a separate legal entity for the sole purpose of bidding on a contract for the operation of a terminal at Doremus Avenue in Newark and avoiding liability to creditors like Local 560 and the Pension and Welfare Funds. The Plaintiffs allege that Caliber Auto Transfer

---

[1] Caliber Management, Inc., Caliber Holdings, Inc., Caliber Auto Transfer of Ohio, Inc., Caliber Auto Technical Group, Inc., Benrelle Management, Inc., Caliber Auto Transfer of St. Louis, Inc., Caliber Auto Transfer of Missouri, Inc., Caliber Auto Transfer of Mira Loma, Inc., Caliber Auto Transfer of Detroit, Inc., CAT Drive-A-Way, Inc., Caliber Quality, Inc., Caliber Intermodal, Inc., Competitive Auto Ramp Services, Inc., National Switching, Inc., Caliber Mechanical Prepping, Inc., Facility Maintenance Services, Inc., Chesapeake Auto Terminal, Inc., Precar LLC, Caliber Mixing Center, Inc., Chesapeake Auto Transfer, Inc., Texas Temporary Staffing, Inc., DMC Auto Transfer of Chicago, Inc., and Caliber KC Mixing Center, Inc. (collectively, "Corporate Defendants").

[2] Samuel Hildebrand, Jacquelyn Hildebrand, Jacob Hildebrand, Lauren Huang, Boyd Dickens, Ashley Dickens, and Colleen Dickens (collectively, "Individual Defendants").

was operated, administered and managed as a part of the integrated enterprise comprised of the Corporate Defendants and Caliber Auto Transfer (the "Caliber Enterprise").

The Defendants brought the present motion to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1); for lack of personal jurisdiction, pursuant to Rule 12(b)(2); and for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). They assert various grounds for dismissal, including: (1) the Complaint does not state a claim for violation of ERISA or the LMRA, so those statutes do not provide federal question jurisdiction; (2) the Complaint does not state a claim over which the Court may exercise ancillary jurisdiction; (3) the Complaint's ERISA claims that are premised on "control group" and "avoid and evade" liability do not state a claim upon which relief may be granted; (4) in the alternative, the Complaint is barred by the doctrine of claim preclusion; and (5) the Court lacks personal jurisdiction over certain individual defendants.

The motion to dismiss the Complaint is granted in part and denied in part. The Court finds at this juncture that it does have subject matter jurisdiction over the Plaintiffs' LMRA and ERISA claims, which allege direct liability for the underlying violations, as well as the control group and avoid and evade claims, which the Court finds are sufficient to pass the Rule 12(b)(6) motion. Consequently, the Court may exercise supplemental jurisdiction over the claims involving the Individual Defendants. The Defendants' motion to dismiss is granted for all claims against Caliber Auto Transfer, Ashley Dickens, Colleen Dickens, Jacob Hildebrand, and Lauren Huang; the claims against Caliber Auto Transfer are dismissed under the doctrine of claim preclusion, and the claims against the four individual defendants named above are dismissed because the Court finds that it lacks personal jurisdiction over them.

# I.  BACKGROUND

The Defendants filed the present motion to dismiss the Complaint on March 22, 2010. The Court held oral argument on April 19, 2010.  The Plaintiffs sought and were granted leave to amend after the motion hearing.  The Defendants did not oppose the motion to amend.  Because the Amended Complaint appears to only correct typographical errors, such as the Complaint's having two "Count Six" designations and "paragraph 181" designations, the Court will treat the Amended Complaint as the operative document for this motion.

The following are the allegations of the Amended Complaint, which are, for the purpose of this motion only, accepted as true and construed in the light most favorable to the Plaintiffs. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Generally, Plaintiffs allege that the Corporate Defendants should be jointly and severally liable for unpaid wages, delinquent employee benefit contributions, and withdrawal liability incurred by Caliber Auto Transfer because the Corporate Defendants were actually a single employer and alter ego of Caliber Auto Transfer.  Additionally, Plaintiffs seek to hold all Individual Defendants personally, jointly, and severally liable for the unpaid wages, employee benefit contributions, and withdrawal liability incurred by Caliber Auto Transfer based on veil-piercing, "control group" and "evade and avoid" theories.

## B.    The Parties

The Pension Fund and Welfare Fund are multi-employer employee benefit plans and their principal places of business are in Union City, New Jersey.  Local 560 is the exclusive bargaining representative for the employees formerly employed by the Caliber Auto Transfer. (Am. Compl. ¶¶ 10-13.)

The Corporate Defendants are all organized and registered as corporations, with the exception of one entity, Precar, LLC.[3]  All are incorporated in Maryland, with the exception of Competitive Ramp Services (incorporated in Kentucky) and National Switching (incorporated in Oklahoma).  From March, 1997, to December 21, 2005, all the Corporate Defendants incorporated in Maryland listed the same address as their principal office, 517 Benfield Rd., Severna Park, MD 21146.  On December 21, 2005, all the Corporate Defendants incorporated in Maryland changed the address of their principal office to 8432 Veterans Highway, Millersville, MD 21108.  (Id. ¶¶ 14-16.)

Caliber Auto Transfer was licensed to do business in New Jersey and employed Local 560 bargaining unit employees at its facility located in Newark, New Jersey, until it ceased operating in Newark on July 31, 2007.  (Id. ¶¶ 17-18.)  After it terminated operations at its Newark facility, Caliber Auto Transfer moved its administrative and operational headquarters from Millersville, Maryland, to Edmond, Oklahoma.

Caliber Holdings, Inc. ("Caliber Holdings"), Caliber Management, Inc. ("Caliber Management"), Caliber Auto Transfer Ohio, Inc. ("Caliber Ohio"), and Caliber Auto Technical Group, Inc. ("Caliber Technical") are Maryland corporations that maintained administrative and operational headquarters at the same location on Veterans Highway in Millersville, Maryland, until they all moved to the same location in Edmond, Oklahoma when Caliber Auto Transfer terminated operations of its Newark facility.  They all presently list their principal place of business as 550 M. Ritchie Highway #162, Severna Park, MD 21146.  (Id. ¶¶ 19-28.)

Caliber Auto Transfer of St. Louis, Inc., Caliber Auto Transfer of Missouri, Inc., Caliber Auto Transfer of Mira Loma, Inc., Caliber Auto Transfer of Detroit, Inc., CAT Drive-A-Way,

_____

[3] Precar, LLC is a foreign limited liability company with its principal place of business in Chicago, Illinois.  Precar, LLC was purchased by Caliber Auto Transfer of St. Louis.

Inc., Caliber Quality, Inc., Caliber Intermodal, Inc., Competitive Auto Ramp Services, Inc., National Switching, Inc., Caliber Mechanical Prepping, Inc., Facility Maintenance Services, Inc., Chesapeake Auto Terminal, Inc., Precar LLC, Caliber Mixing Center, Inc., Chesapeake Auto Transfer, Inc., Texas Temporary Staffing, Inc., DMC Auto Transfer of Chicago, Inc., and Caliber KC Mixing Center, Inc., are all wholly-owned and/or controlled subsidiaries of Caliber Holdings ("Caliber Subsidiaries").  (Id. ¶ 29.) When Caliber Auto Transfer terminated operations of its Newark facility, the administrative and operational functions of the Caliber Subsidiaries moved to the Edmond, Oklahoma location.  All the Caliber Subsidiaries currently list their principal office as the Ritchie Highway location in Severna Park, Maryland.

Samuel and Jacquelyn Hildebrand are husband and wife, and Lauren Huang and Jacob Hildebrand are the children of Jacquelyn and Samuel.  Colleen Dickens and Ashley Dickens are the daughters of Boyd Dickens.  All corporate officer and director positions of all Corporate Defendants are held by Jacquelyn Hildebrand, Samuel Hildebrand, Lauren Huang, Jacob Hildebrand, and Boyd Dickens.  The equity ownership of all Corporate Defendants is held by a combination of the seven Individual Defendants.  (Id. ¶¶ 34-40.)

## C.    Claims of the Amended Complaint Related to Past Judgments

Caliber Auto Transfer and Local 560 were signatories to Collective Bargaining Agreements ("CBAs") that set forth the terms and conditions of employment for Local 560 bargaining unit employees, for the term from July 8, 1997 to May 31, 2008.  The CBAs included provisions concerning wage rates, benefit contribution rates to the Welfare and Pension Funds, seniority status and the relevant protections of such status, and grievance and arbitration procedures.  (Id. ¶¶ 41-43.)

Count One alleges that Caliber Auto Transfer violated the CBAs by calling in less senior employees on July 30-31, 2007, which deprived the senior employees of wages and deprived the Pension Fund of employee benefit contributions for those hours of wages.  (Id. ¶¶ 47-48.)  An arbitrator ordered Caliber Auto Transfer to pay $2,690.00 in lost wages and $342.00 in unpaid pension contributions, and the Union obtained a judgment enforcing the arbitration in New Jersey Superior Court, in the amount of $3,032.40.  (Id. ¶¶ 49-53.)

Count Two alleges that the Funds conducted payroll audits of Caliber Auto Transfer's records for the period January 1, 2004, through December 31, 2005, and found that the company had under-reported its contribution obligations.  (Id. ¶¶ 58-61.)  An arbitrator ordered Caliber Auto Transfer to pay the Pension and Welfare Funds $25,102.57 for the amount of delinquent principal contribution obligations and costs; the Union obtained a judgment against Caliber Auto Transfer in New Jersey Superior Court, in the amount of $26,677.07.  (Id. ¶¶ 63-66.)

Count Three alleges that the Funds conducted payroll audits for the periods January 1, 2006 through December 31, 2006 and January 1, 2007 through December 31, 2007, and found that Caliber Auto Transfer had under-reported its contribution obligations.  (Id. ¶¶ 71-75.)  An arbitrator ordered Caliber Auto Transfer to pay the Pension and Welfare Funds $40,329.94 for the amount of delinquent principal contribution obligations and costs; the Union obtained a Judgment against Caliber Auto Transfer in New Jersey Superior Court, in the amount of $42,329.94.  (Id. ¶¶ 76-79.)

Count Four alleges that when it ceased operations of its Newark facility, Caliber Auto Transfer failed to make the required wage payments to bargaining unit employees for accrued but unused vacation time, and failed to make contributions to the Pension Fund for each hour of such vacation time.  (Id. ¶¶ 84-87.)  An arbitrator determined that Caliber Auto Transfer had

failed to pay bargaining unit employees and the Pension Fund for accrued and unused vacation time.  The arbitrator retained jurisdiction and advised the parties to resolve the question of the monetary amount of the remedy.  The Funds submitted their calculations of the amounts claimed.  By email dated March 3, 2009, Jacquelyn Hildebrand disputed the Funds' stated amounts and offered her own calculations.  (Id. ¶¶ 88-92.)  The parties were unable to resolve the monetary dispute, so the arbitrator determined that the unpaid vacation payouts totaled $49,391.62, the delinquent Pension Fund contributions totaled $10,499.38, liquidated damages totaled $2,099.88 and accrued interest totaled $1,924.89.  The Union and the Fund obtained judgment in the amount of $67,058.72.  (Id. ¶¶ 93-97.)

Count Five alleges that the permanent cessation of Caliber Auto Transfer's operations at the Newark facility resulted in a "complete withdrawal" as a contributing employer from the Pension Fund.  The Pension Fund assessed withdrawal liability and demanded that Caliber Auto Transfer remit its payment.  Caliber Auto Transfer did not remit the monies requested or dispute the assessment.  (Id. ¶¶ 102-113.)  The Pension Fund filed a Complaint against Caliber Auto Transfer in this Court on June 3, 2008, Civ. No. 08-2782 (JAG).  The Court issued a default judgment on October 26, 2009, in the amount of $2,727,189.84.  (Id. ¶¶ 114-115.)

To date, none of the above judgments have been satisfied by Caliber Auto Transfer.  The Plaintiffs request that the Defendants pay the outstanding wages, delinquent fund contributions, and withdrawal liability, as well as arbitration fees, attorney's fees associated with the arbitrations, court costs and attorney's fees incurred in the confirmation of the arbitration awards, pre-judgment and post-judgment interests, court costs and attorney's fees.

**D.      Claims of the Amended Complaint Related to Corporate Structure**

Count Six alleges that the Defendants should be liable for Caliber Auto Transfer's debts under a theory of single-employer/alter ego liability, based on (1) gross undercapitalization, (2) failure to observe corporate formalities, (3) dominant officers and/or directors siphoning the funds of the debtor corporation, (4) non-functioning of officers/directors, (5) absence of corporate records, and (6) the corporations being merely a façade for the operation of a dominant shareholder.  Count Seven alleges that the Defendants should also be liable based on veil piercing.  Count Eight premises liability on a control group theory, pursuant to § 4001(b)(1) of ERISA, 29 U.S.C. § 1301(a)(14)(A) and § 414 of the Internal Revenue Code.  Count Nine seeks "avoid and evade" liability, pursuant ERISA, 29 U.S.C. § 1392(c).

The Plaintiffs allege that the Corporate Defendants and Individual Defendants failed to observe corporate formalities.  The Corporate Defendants were operated exclusively by Jacquelyn Hildebrand, Samuel Hildebrand, and Boyd Dickens, and the remaining officers and directors preformed little or no services and contributed nothing to the management or operation of the Corporate Defendants.  (Id. ¶ 171.)  The Corporate Defendants failed to maintain corporate records or hold regular meetings of the Boards of Directors, officers and shareholders.  (Id. ¶172.)  Plaintiffs allege that the Corporate Defendants created separate façade businesses for the sole purpose of being signatories to collective bargaining agreements with labor unions at locations where labor forces had organized.  (Id. ¶ 173.)

Specifically, Caliber Auto Transfer was founded and incorporated for the sole purpose of bidding on a contract with Conrail for the operation of a terminal at Doremus Avenue in Newark. It won the bid.  (Id. ¶ 176.)  When Caliber Auto Transfer incorporated on March 31, 1997, it

issued 10,000 shares of par value stock at $0.01.  Caliber Auto Transfer did not pay salaries to its officers or directors,[4] or issue dividends to its shareholders[5].  (Id. ¶¶ 123-125.)

Caliber Auto Transfer was undercapitalized for the entire relevant period; it owned no real or personal property or significant assets.  The Plaintiffs assert that Caliber Auto Transfer was undercapitalized in order to limit its creditors' ability to recover debts incurred by the company.  (Id. ¶¶ 136, 176-179.)  Caliber Auto Transfer lacked sufficient revenues and operating capital, operating at a loss of $12,588.23, $35,209.73, and $287,307.24 in 2005, 2006, and 2007, respectively.  (Id. ¶ 170.)  Caliber Auto Transfer appears to have ceased operation of its Newark facility because it failed to win the bid to renew its contract with Conrail.  (Id. ¶ 178.)

On January 7, 2008, Jacquelyn Hildebrand made a loan to the company in the amount of $691,124.54.  On the same date, the two other shareholder/Directors, Jacob Hildebrand and Lauren Huang, made loans to Caliber Auto Transfer of $39,600.00 each.  No collateral was offered by Caliber Auto Transfer in return for the loans.  The shareholder/Directors made the loans to satisfy Caliber Auto Transfer's obligations to Bank of America for a blanket line of credit extended to all the Corporate Defendants.  In turn, Bank of America extended a blanket line of credit to the Corporate Defendants as a group of borrowers all covered under a single borrowers' agreement.  (Id. ¶¶ 126-128.)

Jacquelyn Hildebrand maintained and controlled the line of credit for the Caliber Enterprise.  She assessed each Corporate Defendants' need for operating capital and transferred funds to each as needed.  (Id. ¶¶163-164.)   The blanket line of credit extended to the Corporate Defendants was backed by assets of each and every Corporate Defendant, including accounts receivable of the various Corporate Defendants.  Jacquelyn Hildebrand signed the agreement as

---

[4] Jacques Hildebrand, Samuel Hildebrand, Jacob Hildebrand, and Lauren Huang.
[5] Jacques Hildebrand, Jacob Hildebrand, and Lauren Huang.

the Corporate Secretary/Treasurer on behalf of every Corporate Defendant covered under the line

of credit.  Jacquelyn Hildebrand, Samuel Hildebrand, and Boyd Dickens individually were

guarantors for the blanket line of credit.  After the blanket line of credit had expired and the

obligations to the bank were satisfied, between February 15, 2008, and April 25, 2008, Jacquelyn

Hildebrand loaned an additional $69,500.00 to Caliber Auto Transfer.  (Id. ¶¶ 129-135.)

All the Corporate Defendants were covered by a single insurance policy through Liberty

Mutual, which provided automobile, workers' compensation, garage keepers, and general

liability coverage.  One accounting firm provided accounting services for all the Corporate

Defendants.  All the Corporate Defendants maintained a single website (available at

www.caliberauto.com), which contained corporate newsletters, advertising, descriptions of

services and consumer updates.  The website describes the company simply as "Caliber Auto

Transfer" and describes it as "a loading and unloading contractor that assists to facilitate the

transportation of automobiles and container freight."  The Corporate Defendants all operated

under a single trademark, which appears on the website, corporate stationary, and checks issued

by the Corporate Defendants.  (Id. ¶¶ 137-140.)

Until 2004, Benrelle, a corporation owned by Samuel and Jacquelyn Hildebrand, whose

officers included Samuel Hildebrand, Jacquelyn Hildebrand, and Boyd Dickens, performed all

payroll services for all the Corporate Defendants.  Benrelle transferred all business functions to

Caliber Management in 2004 and ceased doing business.  Caliber Management paid no

compensation to Benrelle in consideration for the transfer of business and goodwill.  Caliber

Management is owned by Samuel Hildebrand and Boyd Dickens, with Jacquelyn, Samuel and

Boyd Dickens serving as officers.  Caliber Management was responsible for receiving and

processing all payroll information from the Corporate Defendants and issuing checks to the

Corporate Defendants' employees.  Caliber Management issued all paychecks from a single operating account.  Caliber Management also provided services including payables, billings, receivables, and insurance functions to all Corporate Defendants.  No service agreements existed and no fees were paid by Caliber Auto Transfer to Caliber Management for the provision of these services.  (Id. ¶¶ 153-162.)

Boyd Dickens was the labor relations representative for every Corporate Defendant, which included negotiating collective bargaining agreements and resolving grievances with the unions.  Boyd Dickens executed collective bargaining agreements on behalf of the various Corporate Defendants that were signatories to these agreements.  On several occasions, the agreements were executed by employees of Caliber Management, instead of by employees of the Corporate Defendant that was the named signatory to the agreement.  (Id. ¶¶ 141-143.)

Jacquelyn Hildebrand reviewed and signed the state and federal tax returns of every Corporate Defendant.  She permitted the Corporate Defendants to use equipment that she owned personally.  On at least one occasion, she sold equipment that she personally owned to one of the Corporate Defendants for $55,000.00.  No lease agreements, service agreements, or purchase agreements existed for the Corporate Defendants' use or sale of this equipment.  (Id. ¶¶ 145-148.)

The Corporate Defendants exercised communal use of equipment, staff and facilities among and between the various business entities.  No lease agreements, service agreements, or purchase agreements existed between the Corporate Defendants regarding the use of equipment, staff and facilities.  (Id. ¶¶ 149-151.)

When Caliber Auto Transfer ceased operations in Newark, it sold equipment to the successor employer, RCS Management for $35,000.00, with a payment of $25,000.00 to Caliber

Auto Transfer and $10,000.00 rendered to Caliber Management.  (<u>Id.</u> ¶ 152.)  On at least one

occasion, Caliber Auto Transfer made a $30,000.00 loan to one of its shareholders.  (<u>Id.</u> ¶ 165.)

## II. DISCUSSION

The Plaintiffs claim that the Court has federal question subject matter jurisdiction over

the ERISA claims and claims brought under LMRA § 185(c), pursuant to 28 U.S.C. § 1331, and

supplemental jurisdiction over claims brought under LMRA § 185(a), pursuant to 28 U.S.C. §

1367.  Plaintiffs contend that they have personal jurisdiction over the Individual Defendants

based on their contacts with New Jersey.  (Am. Compl. ¶¶ 5-6.)  Plaintiffs contend that Caliber

Auto Transfer and every Corporate Defendants, as single employers and alter egos of Caliber

Auto, were "employers" within the meaning of ERISA, 29 U.S.C. § 1002(5) and LMRA, 29

U.S.C. § 185(a).  (Am. Compl. ¶¶ 32-33.)

The Defendants move to dismiss the Amended Complaint for lack of subject matter

jurisdiction, pursuant to Rule 12(b)(1), because the Amended Complaint does not state a new

claim for violation of ERISA or the LMRA, so the Court does not have ancillary or subject

matter jurisdiction; for lack of personal jurisdiction over certain defendants, pursuant to Rule

12(b)(2); and for failure of the Amended Complaint's claims premised on "control and group"

and "avoid and evade" liability to state a claim upon which relief may be granted, pursuant to

Rule 12(b)(6).

## A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for

failure to state a claim upon which relief can be granted.  When considering a motion under Rule

12(b)(6), the court must accept the factual allegations in the complaint as true and draw all

reasonable inferences in favor of the plaintiff.  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902,

906 (3d Cir. 1997).  The court's inquiry "is not whether plaintiffs will ultimately prevail in a trial

on the merits, but whether they should be afforded an opportunity to offer evidence in support of

their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

 The Supreme Court recently clarified the standard for a motion to dismiss under Rule

12(b)(6) in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in

Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim, which would entitle him to relief."  In contrast, the Court in Bell Atlantic

held that "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  550 U.S. at 545.  The assertions in the complaint must be enough to "state a claim to

relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to

draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S.

Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (in

order to survive a motion to dismiss, the factual allegations in a complaint must "raise a

reasonable expectation that discovery will reveal evidence of the necessary element," thereby

justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

 When assessing the sufficiency of a complaint, the court must distinguish factual

contentions – which allege behavior on the part of the defendant that, if true, would satisfy one

or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements."  Iqbal, 129 S. Ct. at 1949.  Although for the

purposes of a motion to dismiss the court must assume the veracity of the facts asserted in the

complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation."

Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

**B.      Subject Matter Jurisdiction**

When pleadings are challenged under Rule 12(b)(1), the Court must first determine whether the challenge is a "facial" or "factual" attack on the Court's jurisdiction.  A facial attack is "an alleged pleading deficiency," whereas a factual attack concerns "the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites."  CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008).  When considering a facial attack, "the Court must consider the allegations of the complaint as true, and in that respect such a Rule 12(b)(1) motion is similar to a Rule 12(b)(6) motion."  Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006) (citing Mortensen v. First Fed Sav. & Loan, 549 F.2d 884, 891 (3d Cir. 1977)) (internal quotations omitted).  When considering a factual attack, the allegations of the complaint have no presumptive truthfulness and the court must weigh the evidence presented by the parties.  McCann v. Newman Irrevocable Trust, 458 F.3d 281, 290-291 (3d Cir. 2006).  In the face of a jurisdictional challenge, the Plaintiff has the burden to prove that the Court has jurisdiction.  Petruska, 462 F.3d at 302.

The Defendants assert that they are mounting a facial challenge to the Amended Complaint.  The Court agrees. The Defendants are not attacking the truth of the factual allegations.  Rather, they claim that the facts alleged in the Amended Complaint suggest a lack of jurisdiction, because the type of claims the Plaintiffs assert do not arise under federal law.  Therefore, this is a facial Rule 12(b)(1) attack, and so the Plaintiffs' allegations are accepted as true for the purpose of determining whether the Court has subject matter jurisdiction.

The Defendants contend that this is actually a collections action to enforce preexisting judgments against third parties, rather than a suit asserting independent violations of ERISA or the LMRA.  The Defendants rely on the Supreme Court's decision in Peacock v. Thomas, 516 U.S. 349 (1996), which held that because ERISA does not provide an enforcement mechanism for collecting judgments from third parties who were not subject to the original judgment, ERISA does not confer federal question jurisdiction for the federal courts to consider a suit that is actually an attempt to enforce a previously obtained ERISA judgment against other parties under a veil-piercing theory of liability.

The Plaintiffs argue that because all the Defendants acted in concert as a single business entity, each actually committed and may be held liable for the various ERISA/LMRA violations. They contend that this action is a new, direct suit against entities and persons that could be liable in their own right for the violations of the CBAs, rather than merely a collections suit.  The Court finds that the Plaintiffs' factual allegations establish subject matter jurisdiction because they sufficiently state direct ERISA and LMRA claims against the Corporate Defendants; in turn, the Court may exercise supplemental jurisdiction over the rest of the Plaintiffs' claims.

In Peacock v. Thomas, 516 U.S. 349 (1996), the plaintiff had obtained a judgment via a previous lawsuit for benefits due under an ERISA pension plan against a company, but the court in the previous suit declined to issue a judgment against Peacock, an officer and shareholder of the judgment company, finding that unlike the company, Peacock was not a fiduciary under ERISA.  Id. at 351.  Before the plaintiff executed the judgment, Peacock settled many of the company's accounts with favored creditors, including himself.  Id. at 352.  Thomas was unable to collect from the company, so he instituted a new suit to sue Peacock under a veil piercing

theory, claiming that he had siphoned assets to prevent satisfaction of the judgment.  Id.  Thomas did not claim that Peacock was liable for the underlying ERISA violation.

The Court held that ERISA does not grant federal jurisdiction over a suit to pierce the corporate veil to reach a defendant who would not otherwise be subject to ERISA liability.  Id. at 354.  "Because [the plaintiff] alleged no 'underlying' violation of any provision of ERISA or an ERISA plan, neither ERISA's jurisdictional provision, 29 U.S.C. § 1132(e)(1), nor 28 U.S.C. § 1331 supplied the district court with subject-matter jurisdiction over [the] suit."  Id. at 354.  Under Peacock, ERISA will not supply the federal courts with subject matter jurisdiction in a subsequent suit against non-judgment debtors unless the complaint states a direct claim against them.  Vicarious theories of liability will not suffice.

At the pleadings stage, the Plaintiffs have alleged facts giving rise to a reasonable inference that the Corporate Defendants participated in the underlying ERISA violations such that they could be directly liable for them.  The Plaintiffs' allegations establish that the Caliber Enterprise was essentially an integrated entity.  Based on the pleadings, it is reasonable to expect that the Plaintiffs may adduce evidence during discovery that the operations of the Caliber Enterprise were so integrated that effectively all of the Corporate Defendants participated directly in the underlying violations.  The Plaintiffs allege that capital, staff, equipment, accounting, were all exchanged interchangeably throughout the enterprise. Labor relations were managed in the same manner for all the entities.  Caliber Auto Transfer was undercapitalized and was only viable as a part of the Caliber Enterprise.  Plaintiffs alleged that the Caliber Enterprise only incorporated an entity in New Jersey so that it could bid on a specific contract and later avoid obligations to creditors.  The Plaintiffs have established more than just a relationship with Caliber Auto Transfer; they have alleged facts showing that the parties were so integrated that

they were one and the same as Caliber Auto Transfer and could have directly participated in the underlying violations.  As a result, they may be directly liable under ERISA.

Additionally, the Plaintiffs have alleged direct actions on the part of Caliber Management giving rise to an inference that it had a specific role in the underlying ERISA violations.  Caliber Management received and processed all payroll information from the Corporate Defendants, including Caliber Auto Transfer.  It issued all paychecks from a single operating account, and managed the Corporate Defendants' payables, billings, and receivables.  Additionally, when Caliber Auto Transfer ceased operations in Newark, it sold some equipment to its successor and paid $10,000 of the proceeds from the sale to Caliber Management.  It is reasonable to infer that discovery could yield evidence that Caliber Management played a direct role in the ERISA and LMRA violations.

There is no indication in Peacock that the jurisdictional question would be any different with regard to claims under LMRA § 185, in comparison to ERISA claims.  Peacock rejects judgment-enforcement jurisdiction not just for ERISA claims, but for any "new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment."  See 516 U.S. at 351.

Finally, as described in Part C of the Discussion section of this opinion, the Court finds that the Plaintiffs have stated a claim for control group and avoid and evade liability sufficient to survive the Rule 12(b)(6) motion.  The Court also has federal question subject matter jurisdiction over those claims, which also state direct claims for violations of the MPPAA against the Corporate Defendants.  It appears at this point in the litigation that the Court has subject matter jurisdiction over the claims against the Corporate Defendants.

The Individual Defendants, in turn, are subject to the Court's supplemental jurisdiction. Because the Court has federal question jurisdiction over the Corporate Defendants, the Court may exercise subject matter jurisdiction over related claims that form a part of the same case or controversy.  See 28 U.S.C. 1367(a); Peacock, 516 U.S. at 335 ("Ancillary jurisdiction may extend to claims having a factual and logical dependence on 'the primary lawsuit,' but that primary lawsuit must contain an independent basis for federal jurisdiction."); Hudson County Carpenters  Local Union No. 6 v. V.S.R. Construction Corp., 127 F. Supp. 2d 565, 570 (D.N.J. 2000).

The Defendants cite extensively to an unpublished decision of the Court of Appeals and an unpublished decision of this Court in support of their argument that this Court does not have subject matter jurisdiction over any of the claims in this case.

A recent unpublished decision of this Court held that based solely on an interpretation of Peacock in an unpublished Court of Appeals decision, Gambone v. Lite Rock Drywall, 288 Fed. Appx. 9 (3d Cir. 2008), Peacock prohibited "jurisdiction over separate actions imposing new theories of liability, including 'alter-ego,' 'veil-piercing,' and 'single employer.'"  Operative Plasterers v. AGJ Construction, LLC, ("Operative Plasterers I") Civ. No. 08-6163 (RMB), 2009 U.S. Dist. LEXIS 101714 at *1 (D.N.J. Oct. 30, 2009).  Defendants rely on the broad-stroke pronouncements that these cases make, in an attempt to eschew the more nuanced interpretations of Peacock that many other cases offer.  Operative Plasterers I wrote that Gambone had "rejected" the interpretation of other courts which had "h[e]ld that enforcement actions establishing the liability of a non-judgment entity on an 'alter ego' theory were distinguishable from, and thus not subject to, the Peacock rule."  Id.  Gambone does not, contrary to this Court's assertion in Operative Plasterers I, change controlling law for the district courts in this circuit.

First, the decision in <u>Gambone</u> was designated as "not precedential" under Rule 5.2 the Internal Operating Procedures ("IOPs") of the Court of Appeals.  Pursuant to Rule 5.7 of the IOPs, the citation of such rulings – commonly referred to as "NPOs" – is discouraged and "[s]uch opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing."  <u>See, e.g.</u>, <u>Jamison v. Klem</u>, 544 F.3d 266, 278 n.11 (3d Cir. 2008) ("We do not accept [unpublished opinions] as binding precedent because, unlike precedential opinions, they do not circulate to the entire court before they are filed."); <u>In re Grand Jury Investigation</u>, 445 F.3d 266, 276 (3d Cir. 2006) (finding that "[t]he District Court erred in relying on a NPO," and stating that such rulings "are not precedents for the district courts of this circuit.").[6]  Accordingly, the ruling in <u>Gambone</u> is not binding and cannot constitute a change in controlling law.

However, the Defendants have relied so thoroughly on <u>Gambone</u> and <u>Operative Plasterers I</u> in their arguments that a detailed examination of each is in order.  <u>Gambone</u>'s main holding does not actually conflict with this Court's instant interpretation of <u>Peacock</u>.  In <u>Gambone</u>, the plaintiffs secured a securities fraud judgment against the defendant corporation and its founder.  In a post-judgment proceeding, the Plaintiffs sought to implead two parties to whom the defendant corporation and founder had allegedly transferred assets in order to thwart the plaintiffs' recovery on their judgment.  The transferees of the assets challenged the district court's subject matter jurisdiction to enforce the judgment against them, based on <u>Peacock</u>, 516 U.S. at 357-58.  <u>Id.</u> at *13.

_____

[6] Mercedes argued in its brief that NPOs issued by the Court of Appeals constitute persuasive authority.  (Def.'s Br. Supp. Mot. Decertify Class 4 n.1.)  Despite the fact that its entire argument in the pending Motion to Decertify the Class depends on its ability to convince this Court to follow <u>Nafar,</u> the company cited no authority in support of that proposition beyond an unpublished, non-binding decision of this Court.  In light of the clear statements to the contrary made by the Court of Appeals in the published, precedential, and binding cases cited above, the Court will discount the authority cited by Mercedes.

The Court of Appeals distinguished <u>Peacock</u> and determined that its restrictions did not apply, since this was not an attempt to hold additional parties liable, but rather an attempt to reach assets that were subject to the original judgment.  The Court of Appeals nonetheless summarized <u>Peacock</u>, and construed <u>Peacock</u>'s holding as stating that "ancillary jurisdiction is not intended for use as a tool for establishing personal liability on the part of a new defendant, for instance by designating that third party as an alter ego of the indebted party or by piercing the corporate veil."  <u>Gambone</u> presented a completely different issue than the one currently before this Court; whereas the present question before this Court is whether it may exercise subject matter jurisdiction over new parties in a subsequent related matter, the Court of Appeals in <u>Gambone</u> was determining whether a court had jurisdiction over assets that were subject to a judgment in a related matter.  The Court of Appeals explained in <u>Gambone</u> that <u>Peacock</u> "only bars the exercise of ancillary jurisdiction over attempts to impose personal liability for an existing judgment on a new party," and did not bar the Court of Appeals from exercising jurisdiction over suits involving assets that were already subject to the judgment.  <u>Id.</u> at *13-14. The "plaintiffs' fraudulent conveyance claim against the two transferees of the assets did not seek to impose personal liability on the transferees…[but] [r]ather…to corral the defendant corporation's assets to preserve their access to them."  <u>Id.</u> at *14.  Thus, <u>Gambone</u> is distinguishable from the current matter and its interpretation of <u>Peacock</u> is dicta in this context.

This Court in <u>Operative Plasterers I</u> oversimplified and misconstrued <u>Gambone</u>'s holding; it erroneously explained that <u>Gambone</u> barred any "enforcement actions establishing the liability of a non-judgment entity on an 'alter ego' theory."  <u>See id.</u>  <u>Operative Plasterers I</u> seems to hold that a court's sole consideration in determining whether <u>Peacock</u> bars a subsequent ERISA claim is whether the complaint premises liability on a stated theory of alter-ego, veil

piercing, or single employer.  The Court in <u>Operative Plasterers I</u> would have courts throw out any claims in which a complaint premised liability for ERISA claims on a theory bearing one of those forbidden descriptors.  This Court disagrees with <u>Operative Plasterers I</u>'s formalistic interpretation of <u>Peacock</u>.  This Court interprets <u>Peacock</u> as not holding that the determinative factor when a Court is deciding whether it may exercise subject matter jurisdiction over this type of claim is the nomenclature a complaint uses to designate the parties' relationships.  Rather, <u>Peacock</u> instructs courts to examine the facts alleged and determine whether the complaint states a direct or a vicarious claim against the defendants.  A court cannot, as <u>Peacock</u> clearly instructed, hold a "defendant not otherwise subject to suit under ERISA liable for an ERISA judgment based on a vicarious theory of liability, such as veil-piercing."  516 U.S. at 354.  But <u>Peacock</u> rejects veil piercing because veil-piercing denotes a vicarious, rather than a direct, theory of liability; <u>Peacock</u> does not reject veil piercing based on nomenclature alone.  <u>See Ellis v. All Steel Construction, Inc.</u>, 389 F.3d 1031, 1035 (10th Cir. 2004) ("In short, the determinative factor is not whether ERISA liability is asserted against the second company based upon an alter-ego or veil-piercing theory; rather, the determinative factor is whether ERISA liability is asserted against the second company directly based on the actions of the second company or whether liability is asserted only derivatively or vicariously against the second entity based solely upon the relationship between the second entity and the initial ERISA employer.")

In <u>Operative Plasterers v. AGJ Construction, LLC</u>, ("Operative Plasterers II") Civ. No. 08-6163 (RMB), 2009 U.S. Dist. LEXIS 114630 (D.N.J. Dec. 9, 2009), on a reconsideration motion, this Court clarified its earlier <u>Operative Plasterers I</u> decision and correctly explained that:

> To qualify as a new ERISA claim, the complaint would have had to allege that a third party was either responsible for commission of the original ERISA violation,

or that the third party committed a new and distinct ERISA violation.  In the former instance, a third party is 'responsible' if it directly committed the original violation or had 'common control' over the judgment defendant when the ERISA violation occurred.

Id. *2.  The Court agrees with Operative Plasterers II's characterization of the state of the law.

Importantly, the facts of Operative Plasterers are also distinguishable from the facts presently before the Court.  The complaint in Operative Plasterers simply did not allege the type of violation that is not barred by Peacock.  Some of the non-judgment defendants in that case did not even exist at the time the ERISA violations occurred, and the connection to the underlying ERISA violation of any of the others was attenuated.  Id. at *3.  Therefore, Operative Plasterers I and II are distinguishable from the present matter since here the Plaintiffs have adduced allegations against the Corporate Defendants that could give rise to liability for the underlying ERISA violations based on actual participation in those violations.  The Defendants' reliance on Gambone and Operative Plasterers I does not sway the Court that it has misinterpreted Peacock's holding.

Various courts have interpreted Peacock's holding in the same way as the Court now interprets it.  See, e.g., Central States v. Central Transport, 85 F.3d 1282, 1286 (7th Cir. 1996) (affirming judgment of district court because the plaintiffs' "alter ego" theory alleged that the new defendants exercised "common control" over the previous defendants, such that liability was actually premised on a direct claim for ERISA relief); Hudson County Carpenters Local Union No. 6 v. V.S.R. Construction Corp., 127 F. Supp. 2d 565 (D.N.J. 2000) (finding that the pleadings supported subject matter jurisdiction over the corporate defendants who were not party to the original judgment)[7]; Brown v. Astro Holdings, 385 F. Supp. 2d 519 (E.D. Pa. 2005)

---

[7] The Defendants are correct that this Court's decision not to dismiss the complaint in Hudson County differs from the decision facing the Court in the present matter in an important fashion; the decision on the motion to dismiss in Hudson County was based on the previous Conley v.

(finding subject matter jurisdiction over a claim by the trustees of a pension fund to recover on

an alter ego theory against the corporate affiliates of a corporation that had incurred ERISA

liability and subsequently sought bankruptcy protection); see also Thomas, Head, & Griesen

Employees Trust v. Buster, 95 F.3d 1449, 1454 n.7 (9th Cir. 1996) ("Peacock suggested that

whether a judgment creditor's post-judgment action is within a federal district court's

jurisdiction hinges on whether it seeks merely 'to collect a judgment' but also 'to establish

liability' on the part of the third party.") (emphasis in original); c.f. Ellis, 389 F.3d at 1035-1036

(explaining the relevant distinction between direct and derivative liability under Peacock, and

concluding that the complaint was unable to allege that the successor company to the original

defendant ever exercised any control over the original defendant's operations at the time the

defendant incurred the ERISA obligations, and as such there was no subject matter jurisdiction to

hear the plaintiff's claims); U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489, 498 (1st Cir.

2000) ("[W]here that post judgment proceeding presents a new substantive theory to establish

liability directly on the part of a new party, some independent ground is necessary to assume

federal jurisdiction over the claim…").

  At the current juncture, the Court may properly exercise federal question jurisdiction over

the ERISA, LMRA, and MPPAA claims against the Corporate Defendants, and supplemental

jurisdiction over the claims against the Individual Defendants.

## C. Control Group and Avoid and Evade Liability

  The Defendants challenge two claims in the Amended Complaint for failure to state a

claim upon which relief may be granted, under Rule 12(b)(6).  Specifically, the Defendants claim

---

Gibson, 355 U.S. 41, 45-46 (1957) standard which then governed a motion to dismiss.  However,
the change in pleadings standards did not change the applicable substantive law.  The Court is
satisfied that in reaching its decision in the present matter, it is relying on the current pleading
standards, while incorporating substantive precedent from past decisions.

that the Amended Complaint does not state a claim under the MPPAA's control group provision, or evade and avoid claim. The Court disagrees and will decline to dismiss the Plaintiffs' claims for control group and avoid and evade liability at this stage.

### i.    Control Group Liability

"Under the MPPAA, when an employer prematurely ceases making payments into a pension plan, the trustees of the plan can assess the withdrawal liability against the withdrawing employer in an amount representing that employer's pro rata share of the payments remaining due to the pension fund." Bd. of Trs. Of Trucking Employees of N. Jersey Welfare Fund v. Kero Leasing Corp., 377 F.3d 288, 295 (3d Cir. 2004) (citing 29 U.S.C. § 1381(b)(1)).  "The MPPAA extends responsibility for payment of withdrawal liability beyond the withdrawing employer to all employees of trades or businesses (whether or not incorporated) which are under common control." Id. (citing 29 U.S.C. § 1301(b)(1)).  Here, the Plaintiffs purport to hold all the Individual and Corporate defendants liable for Caliber Auto Transfer's withdrawal liability.  The Defendants argue that the Plaintiffs have failed to plead facts that could give rise to an inference that Caliber Auto Transfer was a member of a controlled group of companies.

The statute does not define "common control," but authorizes the Pension Benefit Guaranty Corporation ("PBGC") to issue regulations defining "common control" that are to be "consistent and coextensive with" regulations promulgated by the Treasury Department under § 414(c) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 414(c).  29 U.S.C. § 1301(b)(1).  The PBGC issued the relevant regulations, codified at 29 C.F.R. §§ 4001.1-4001.3, which incorporate by reference regulations defining "common control" issued by the Internal Revenue Service ("IRS"), codified at 26 C.F.R. §§ 1.414(c)-1 to 1.414(c)-5.  Companies are under "common control" when they are linked by either a parent corporation or group of five or fewer individuals

25

who control 80% of a company's voting shares or profits.  26 C.F.R. § 1.414(c)-2.  "Because the MPPAA refers only to 'trades or businesses' under common control, individual shareholders are generally not liable for withdrawal liability under the MPPAA unless they can be considered sole proprietorships or can be reached through an alter ego or veil piercing theory."  Brown v. Astro Holdings, Inc., 385 F. Supp. 2d 519, 528 (E.D. Pa. 2005).

Here, the Plaintiffs allege that the seven Individual Defendants hold equity ownership in all of the Corporate Defendants.  The Defendants urge the Court to dismiss claims for withdrawal liability because the Plaintiffs did not allege with sufficient specificity facts about the voting power and ownership of each of the corporate entity such that the Court can determine "which Defendants are within a controlled group of companies with other Defendants and on what factual basis."  (Def's Br. 20.)

The Defendants are correct that without more information the Court is unable to discern whether the different entities are a part of a controlled group or not.  However, dismissing the Plaintiffs' claim on that basis is premature.  The Plaintiffs have alleged that some combination of a group of seven individuals held the shares of all of the Corporate Defendants.  For a complaint to pass Rule 12(b)(6) scrutiny, the allegations must be enough to "state a claim to relief that is plausible on its face," Bell Atlantic, 550 U.S. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949.  If seven individuals own the various Corporate Defendants, it is plausible that at least some, if not all, of the Corporate Defendants will qualify as trades or businesses under common control.  The regulations provide examples of individual ownership structures that could yield a designation of common control.  In 26 C.F.R. 1.414(c)-2, Example Four involves seven corporate entities and six individuals.  The Example explains that the

ownership structures reflect a series of corporations that could be considered brother-sister groups of trades or businesses.

Information about voting shares and ownership gathered during discovery could reasonably show that some or all of the Corporate Defendants are sufficiently related through ownership that they could be under common control. Some or all of the Corporate Defendants could be found to be in common control with Caliber Auto Transfer; whether that is the case will involve a factual determination. This information may be uniquely in the control of the Corporate Defendants, such that discovery may yield evidence of the necessary relationships. The Court will allow this claim to proceed.

### ii.    *Avoid and Evade Liability*

The Plaintiffs claim that the Corporate Defendants engaged in sham transactions in violation of § 1392(c), for the purpose of avoiding and evading withdrawal liability.[8]  The Defendants argue that the Amended Complaint does not state a claim for avoid and evade liability because the statute requires arbitration of avoid and evade disputes. The Plaintiffs respond that the Defendants have forfeited their right to arbitral review by failing to contest the Pension Fund's assessment or request arbitration. The Court of Appeals has stated in the context of a withdrawal liability determination that if a party does not exercise its right to request arbitration, it risks losing that right. IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 129 (3d Cir. 1986).  While this result is "seemingly harsh, [it] is but a self-inflicted wound." Id.  The Plaintiffs gave the Defendants notice and an opportunity to request review and

---

[8] The Plaintiffs improperly referred to 29 U.S.C. § 1369, which governs single-employer plans, in their original Complaint, so many of the arguments in both parties' submissions address that portion of the statute. However, at oral argument the Plaintiffs' attorney drew the Court's attention to the mistaken citation and counsel for the Defendants consented to deeming the Complaint amended to reflect the correct section of the statute. The Defendants addressed the appropriate section of the statute as an alternative argument in their briefs, so they have had an opportunity to present their arguments with respect to 29 U.S.C. 1392(c).

arbitration.[9]  Accordingly, under these circumstances, bringing this claim without first arbitrating the matter will not preclude the Plaintiff's ability to now litigate the claim.

**D.      Claim Preclusion**

The Defendants argue in the alternative that all of the Plaintiffs' claims for relief must be dismissed under the doctrine of claim preclusion.  They assert that claim preclusion applies when a final judgment has been entered on the merits of a prior suit involving the same parties or their privities and based on the same cause of action.  The Defendants contend that a claim that could have been raised in the prior suit but was not "must be dismissed as precluded."  (Def's Br. 23.) (citing Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 172 (3d Cir. 2004)).  The Defendants argue that this suit is absolutely precluded as against Caliber Auto Transfer, which was party to all of the previous judgments.  Additionally, they argue that the Amended Complaint's allegations about the intimate relationship between Caliber Auto Transfer and the other defendants show that those parties are in privity, so that the Plaintiffs are similarly precluded from bringing claims which they could have brought in the prior actions.

Plaintiffs respond by asserting that the Individual and Corporate Defendants were not privities, but rather alter egos of Caliber Auto Transfer, so claim preclusion cannot apply.  The Plaintiffs also claim that the parties and the causes of action in this matter are not exactly the same as in the previous matters.  Additionally, they assert that they had not yet discovered the extent and degree of Caliber Auto Transfer's relationship with the other defendants when they presented the earlier cases, so that in effect, the instant case asserts claims and theories that could not have been brought in the earlier cases.

---

[9] Notice of pension liability to one entity in a control group constitutes notice to all entities in the control group.  Barker & Williamson, 788 F.2d at 127.

The Court agrees with the Defendants that Caliber Auto Transfer is not a proper party to this suit, since it was a direct party to the other suits asserting the same claims against it. However, the Court finds that the Plaintiffs' claims for withdrawal liability escape preclusion because they are premised on a theory that is analogous to joint and several liability. It is premature to dismiss the claims against the Corporate and Individual Defendants that were previously brought against Caliber Auto Transfer in arbitrations because it is not clear from the face of the Amended Complaint whether the Plaintiffs could have asserted their claims against the Corporate and Individual Defendants during the arbitration proceedings.

If the doctrine of claim preclusion, or res judicata, bars the Plaintiffs' claims, this Court is powerless to grant relief, and the barred claims must be dismissed. E.E.O.C. v. U.S. Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990) ("There is simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata."). The preclusive effect of a judgment rendered by a federal court depends on federal law, Semtek Int'l v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001), whereas a judgment rendered by a state court is given the effect that the judgment would have in another court of the same state, 28 U.S.C. § 1738, Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). "Since claim preclusion is an affirmative defense, the burden is on the party asserting it to prove all of the elements necessary for its application." Moore's Federal Practice Civil § 131.52. Where the merit of an affirmative defense it is not clear from the face of a complaint, the Court of Appeals has instructed that it may not be resolved on a Rule 12(b)(6) motion. Rycoline Prods. V. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997).

The claims against Caliber Auto Transfer in the present suit are all barred by the doctrine of claim preclusion, since the parties and cause of action in the previous suits and this one are identical with respect to Caliber Auto Transfer.

The Court will begin by determining whether the Plaintiffs are precluded from bringing their withdrawal liability claim against the other defendants based on the judgment rendered by this Court in Employees of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc., Civ. No. 08-2782 (JAG), which granted default judgment for withdrawal liability against Caliber Auto Transfer.

Since "the doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought," In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008), the Court must decide whether the Plaintiffs' failure to name any of the Corporate or Individual Defendants in the previous action should bar this subsequent litigation.

"Federal law of claim preclusion requires a defendant to demonstrate that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991) (citing United States v. Athlone Indus., Inc., 746 F.2d 977, 983 (3d Cir. 1984)).  The first factor is satisfied here; a "judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata," even if it is obtained by default. See Morris v. Jones, 329 U.S. 545, 550-551 (1947) (citing Riehle v. Margolies, 279 U.S. 218, 225 (1929)).  The Plaintiffs dispute the second and third factors as they relate to the Individual and Corporate Defendants.

The second element—the "same parties or their privities—requires a determination of whether the Defendants are "in privity" with Caliber Auto Transfer for the purpose of claim

preclusion.  The term privity in this context generally means that the parties' relationship is such that a prior judgment should preclude a subsequent suit involving nonparties to the original judgment.  In <u>Bruszewski v. United States</u>, 181 F.2d 419, 423 (3d Cir. 1950), the Court of Appeals wrote:

> [P]rivity states no reason for including or excluding one from the estoppel of a judgment.  It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.

<u>Id.</u>

As the Supreme Court recently stated, the term "privity" in the context of claim preclusion has become the "way to express the conclusion that nonparty preclusion is appropriate on any ground."  <u>Taylor v. Sturgell</u>, 128 S. Ct. 2161, 2172 (2008).

The Court finds guidance in the Restatement (Second) of Judgments ("the Restatement"), which has abandoned the term "privity" in the context of nonparty preclusion in favor of identifying specific relationships between parties and nonparties that may preclude claims against nonparties.  Under the Restatement test, the Court would first determine how to categorize the relationship between Caliber Auto Transfer and the other defendants, based on the Restatement's model.

Plaintiffs' withdrawal liability claim against the Corporate Defendants in the present action arises under the MPPAA's control group liability provision, 29 U.S.C. § 1301(b)(1).  Various courts have characterized control group liability as analogous to joint and several liability.  <u>See</u>, <u>e.g.</u>, <u>Connors v. Incoal, Inc.</u>, 995 F.2d 245, 249 (D.C. Cir. 1993); <u>I.A.M. Nat'l Pension Fund v. TMR Realty Co.</u>, 431 F. Supp. 2d 1, 12 (D.D.C. 2006); <u>Local 478 Trucking & Allied Indus. Pension Fund v. Jayne</u>, 778 F. Supp. 1289, 1305 (D.N.J. 1991); <u>Central States, Se. & Sw.  Areas Pension Fund v. Mississippi Warehouse</u>, 853 F. Supp. 1053, 1059 (N.D. Ill. 1994).

"A liability is said to be joint and several when the creditor may demand payment or sue one or more of the parties to such liability separately, or all of them together at his option."  Black's Law Dictionary 837 (6th ed. 1990).

The category of substantive legal relationship delineated in the Restatement that appears to best correlate with control group liability is § 49, which states a rule for determining the preclusive effect of a judgment against "one of several persons liable for the same loss."  The Restatement § 49 suggests that "a judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor."

The Restatement's rationale for this rule is that "[w]hen a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them….If he brings an action against one of them…he may not bring another action on the claim against the obligor whom he has sued."  Restatement § 49(a).  However,

> [T]he claim against others who are liable for the same harm is regarded as separate.  A judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor.

Id.

Under the Restatement's framework, the Plaintiffs' withdrawal liability claim would not be precluded against the Corporate Defendants because under the control group theory the Corporate Defendants are jointly and severally liable for withdrawal liability.  Accordingly, the Plaintiffs are not precluded from bringing suit against Caliber Auto Transfer and other jointly liable parties separately.

The Restatement's test comports with the approach that other courts have taken in similar contexts.  This and other district courts have noted that in the context of control group liability, a

plaintiff may sue one or more defendants, separately or together, at the plaintiff's option.  See Bd of Trs. of Trucking Employees of N. Jersey Welfare Fund v. Gotham Fuel Corp., 860 F. Supp. 1044, 1053 (D.N.J. 1993) (noting, in dicta, that the defendants had not presented a res judicata defense, and in fact, could not, since liability was premised on the control group theory) (citing Central States, Se. & Sw. Areas Pension Fund v. Sztanyo Trust, 693 F. Supp. 531, 540 (E.D. Mich. 1988) (holding that because the defendants were jointly and severally liable under the control group theory that the plaintiffs were not precluded based on a previous suit against other defendants)); see also Central States, Se. & Sw. Areas Pension Fund v. Hayes, 789 F. Supp. 1430, 1434 (N.D. Ill. 1992) ("As a creditor, the Fund is not required to sue all of the controlled group members in one action or lose its rights against unjoined parties; it may even sue each member separately if it elects to."); Bd. of Trs. of W. Conference of Teamsters Pension Tr. Fund v. H.F. Johnson, Inc., 830 F.2d 1009, 1013 (9th Cir. 1987) (controlled group members discovered after  a fund's unsuccessful attempts at collecting prior withdrawal liability judgment against fellow members remain jointly liable and may be sued for full amount of fund's assessment).

The Defendants urge the Court that Connors v. Peles, 724 F. Supp. 1538, 1579 (W.D. Pa. 1989), presents analogous facts to this case and should persuade the Court that the Plaintiffs' current claims are precluded.  In that case, the plaintiffs had brought an action and obtained a judgment in a different district court against a corporate employer.  Id. at 1576.  Subsequently, they filed suit against the corporation's shareholders.  The district court held that the facts simply did not support a finding of alter ego or veil piercing liability.  Id. at 1574-1575.  Additionally, the plaintiffs had not satisfied the notice and demand requirements for withdrawal liability as to

the new defendants.  Id. at 1572.  Although those findings were determinative, the district court

next rejected "out of hand" a number of other theories presented by the plaintiffs.  Id. at 1578.

One of those theories was claim preclusion and the district court invoked it as an

additional bar to the plaintiffs' suit.  The Defendants here refer principally to the district court's

statement that "the 'controlled group' cause of action was readily available to Plaintiffs in the

lawsuit commenced by Plaintiffs in district court in the District of Columbia."  Id. at 1579.  The

district court stated that the identity of the employer was a "necessary determination" in the

original suit, so that any other suit asserting a different employer was precluded.  Id.

This Court is simply not persuaded by the dicta in Connors with respect to claim

preclusion on which Defendants here attempt to rely.  The facts, procedural posture, and claims

here are entirely distinct from those presented to the district court in Connors.  Whereas Connors

appears to have been a judgment as a matter of law following trial, this matter stands at the early

stages of litigation.  In Connors, the district court rejected a controlled group theory in part

because the plaintiffs did not even include the parties who were alleged to be a part of a control

group in the amended complaint.  Here, the Court has found that the Amended Complaint's

control group claim will survive the pleading stage.

Additionally, the Court has found sufficient support for its finding that control group

liability is analogous to joint and several liability, so claim preclusion will not bar the Plaintiffs'

attempt to sue additional parties alleged to be part of a controlled group in a subsequent suit; the

finding of the district court in Connors to the contrary did not cite any precedent and was not

necessary to the district court's holding in that case.  This Court's analysis remains unchanged

after a reading of Connors.  The Plaintiffs' claims for control group liability claim against the

Corporate Defendants is not precluded by this Court's previous default judgment against Caliber

Auto Transfer in <u>Employees of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.</u>, Civ. No. 08-2782 (JAG).

The Court premised its above analysis on the Plaintiffs' control group liability theory, which, as the Court previous stated, does not directly encompass the claims against the Individual Defendants.[10]  However, the Defendants have not provided the Court with any federal precedent or law that would lead the Court to believe that its conclusion with regard to the Individual Defendants should be any different at this stage in the litigation.

The other judgments that the Defendants argue should have preclusive effect are state court judgments confirming arbitration proceedings against Caliber Auto Transfer, described in Counts One, Two, Three, and Four of the Amended Complaint.  The underlying judgments were all issued by a New Jersey Superior Court in confirmation of an arbitration award.  A judgment rendered by a state court is given the effect that the judgment would have in another court of the same state.  <u>Marrese</u>, 470 U.S. at 380.  The Court turns to New Jersey precedent to determine whether the Plaintiffs are precluded from asserting these claims.

The elements for claim preclusion under New Jersey law are almost identical to federal law:  "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one."  <u>McNeil v. Legislative Apportionment Comm'n</u>, 177 N.J. 364, 395 (2003).

New Jersey state law also employs the "entire controversy doctrine, which requires that a plaintiff present in one suit all claims arising out of a single controversy."  <u>Lubrizol Corp. v.</u>

---

[10] As the Court previously stated, "[b]ecause the MPPAA refers only to 'trades or businesses' under common control, individual shareholders are generally not liable for withdrawal liability under the MPPAA unless they can be considered sole proprietorships or can be reached through an alter ego or veil piercing theory."  <u>Brown v. Astro Holdings, Inc.</u>, 385 F. Supp. 2d 519, 528 (E.D. Pa. 2005).

Exxon Corp., 929 F.2d 960, 965 (3d Cir. 1991). This doctrine "reaches more broadly than the 'same cause of action' requirement of traditional res judicata doctrine" and has a broader preclusive effect than both the Restatement and the traditional rule. Id. (citing Melikian v. Corradetti, 791 F.2d 274, 279 (3d Cir. 1986)). The objectives behind the entire controversy doctrine are: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay. Shoremount v. APS Corp., 368 N.J. Super. 252, 254 (App. Div. 2004).

"[U]nder the proper circumstances, the entire controversy doctrine is correctly applied to arbitration proceedings." Id. (citing Spoiltback v. CYR Corp., 295 N.J. Super. 264, 270 (App. Div. 1996)). The principle of the entire controversy doctrine dictates that plaintiffs are precluded from litigating in a civil action issues of which they were aware at the time of a prior dispute settlement proceeding and arbitration, and which were ripe and amenable to resolution in the forum. Id. However, the preclusionary consequences of the entire controversy doctrine are to be applied cautiously to "litigation involving limited-issue arbitration and only when necessary to achieve the purposes and policy of the doctrine." Jersey City Police Officers Benevolent Assoc. v. City of Jersey City, 257 N.J. Super. 6, 14-15 (App. Div. 1992).

It is not clear from the face of the Amended Complaint whether New Jersey's res judicata or entire controversy doctrine should bar these claims. The Court is unable to determine from the Amended Complaint whether the Plaintiffs had an opportunity to present claims against other parties in the underlying arbitration proceedings or in the state court proceedings confirming the arbitrations. Since arbitration may be a forum of limited jurisdictional competence, it is possible that the Plaintiffs could not have presented claims against the Corporate and Individual

Defendants, some of whom were not direct signatories to the CBAs, in the arbitration proceedings.  Likewise, the question of whether the Plaintiffs had enough information about the interrelatedness of the Caliber Enterprise during the underlying adjudications is a factual question that cannot be resolved by reference to the Amended Complaint alone.  Where the merit of an affirmative defense it is not clear from the face of a complaint it may not be resolved on a Rule 12(b)(6) motion.  <u>Rycoline Prods. V. C & W Unlimited</u>, 109 F.3d 883, 886 (3d Cir. 1997).  Dismissal of these claims based on the Defendants' affirmative defense is premature.  The Defendants may renew this defense in the form of a later motion for summary judgment.  <u>See</u> <u>id.</u>

**E.      Personal Jurisdiction**

The Defendants contend that the claims against Ashley Dickens, Colleen Dickens, Jacob Hildebrand, and Lauren Huang should be dismissed pursuant to Rule 12(b)(1), for lack of personal jurisdiction.  The Court agrees.

"Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction."  <u>D'Jamoos v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 102 (3d Cir. 2009).  To meet this burden, Plaintiffs are required to make out a <u>prima</u> <u>facie</u> case of personal jurisdiction.  <u>Id.</u>  The <u>prima</u> <u>facie</u> showing is satisfied by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state."  <u>Mellon Bank PSFS, Nat'l Ass'n v. Farino</u>, 960 F.2d 1217, 1222 (3d Cir. 1992).  Matters outside of the pleadings such as affidavits may be considered, but unless the district court holds an evidentiary hearing, the Plaintiffs' allegations are taken as true and all factual dispute are resolved in their favor.  <u>D'Jamoos</u>, 566 F.3d at 102.

To establish personal jurisdiction over these defendants, the Plaintiffs must show that they have minimum contacts with the state of New Jersey.  <u>See</u> <u>Burger King Corp. v. Rudzewicz</u>,

471 U.S. 462, 476 (1985).  It is clear that none of these four defendants has had sufficiently

continuous and systematic contacts with the forum state to support "general jurisdiction."  See

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418 n.8 (1983).  Thus, the

Plaintiffs must attempt to show that the Court should exercise "specific jurisdiction," which is

appropriate where the cause of action arises out of a defendant's activities within the forum.  For

a court to exercise specific jurisdiction, the defendant must have "purposefully directed his

activities at residents of the forum," and the litigation must "result[] from alleged injuries that

arise out of or relate to those activities."  Burger King Corp., 471 U.S. at 472 (citing Keeton v.

Hustler Magazine, 465 U.S. 770, 774 (1984) and (Helicopteros Nacionales, 466 U.S. 408, 414

(1984)) (internal citations omitted).

The Plaintiffs argue that based on these defendants' status as shareholders of entities

comprising the Caliber Enterprise, the minimum contacts of the corporate entities should be

imputed to them.

The Plaintiffs submitted the transcript of a deposition taken of Jacquelyn Hildebrand on

May 21, 2008.  Jacquelyn Hildebrand stated that Jacob and Lauren were among the shareholders

of Caliber Auto Transfer of Ohio, and that Jacob, Lauren, Ashley and Colleen were among the

shareholders of Caliber Holdings.

The Defendants submitted affidavits from each of the four defendants over whom

personal jurisdiction in this matter is disputed.  The affidavits of Ashley Dickens and Katherine

Dickens (who states that she is the legal guardian of Colleen Dickens) state that neither Ashley

nor Colleen was ever an owner, director, officer, or employee of Caliber Auto Transfer, and that

neither had ever conducted any business in or been involved in any transaction in the state of

New Jersey.

Jacob Hildebrand and Lauren Huang affirmed that they were shareholders of Caliber Auto Transfer but were not involved in any matters related to the labor relations, collective bargaining, or pension plan contributions of Caliber Auto Transfer.  Both Lauren Huang and Jacob Hildebrand stated that they had never traveled to New Jersey for any business purpose. They did travel approximately ten years ago to the Caliber Auto Transfer's New Jersey location but did not conduct any business during that trip.  Additionally, Lauren Huang has served as the Risk Manager for Caliber Management since 2005, and was a part-time Administrative Assistant for Benrelle Management and successively worked in the same capacity for Caliber Management.  Her job responsibilities with Caliber Management involved Caliber Auto Transfer only in that she processed insurance claims related to its business, including matters involving damage to shipments or incidents involving rail cars.  Jacob Hildebrand was a director of Caliber Auto Transfer, but he was never involved in the day to day affairs of Caliber Auto Transfer.

The Plaintiffs' own allegations corroborate the facts presented in the affidavits.  The Amended Complaint alleges:

> The Corporate Defendants were operated exclusively by Jacquelyn Hildebrand, Samuel Hildebrand and Boyd Dickens.  The remaining officers and directors of each Corporate Defendant performed little or no services and contributed nothing to the management and/or operation of these entities.

(Am. Compl. ¶ 171.)

The Plaintiffs rely primarily on two cases, Mellon Bank, 960 F.2d 1217, and RCS Transportation LLC v. Caliber Management, Inc., Civ. No. 06-639, 2007 U.S. Dist. LEXIS 58956 (W.D. Ky. August 9, 2007).  Mellon Bank is distinguishable since it deals with a partnership whose partners guaranteed a contractual obligation.  As Mellon Bank cautions, "a court is required to make an independent factual assessment of a defendant's contacts with the

forum….[e]ach case must be judged on its particular facts." Id. at 1224.  The factual differences between this case and Mellon Bank make it inapposite to the Court's present analysis.

RCS Transportation, 2007 U.S. Dist. LEXIS 58956 at *1-8, involved a suit by a former employee of Caliber Management against Boyd Dickens and Caliber Management for dissemination of an unflattering video of the former employee that cast him and his new employer, a competitor of Caliber, in a negative light.  Caliber Management and Boyd Dickens moved to dismiss for lack of personal jurisdiction.  Id.  The district court noted that in intentional tort-based actions, purposeful availment may be found when a non-resident defendant engages in wrongful conduct targeted at a plaintiff in the forum states.  Id. at *11.  The district court determined that "the defendants' degree of involvement in the operations of its Kentucky affiliates, albeit without common bank accounts, and its alleged direction of the damaging email at Kentucky business contacts renders the exercise of jurisdiction over the defendants reasonable."  Id. at *14.

The Court will examine the contacts of each of these four defendants to the forum state of New Jersey in turn.  The contacts of Ashley and Colleen Dickens are identical.  The Plaintiffs have not submitted any evidence that could lead this Court to reasonably believe that Ashley and Colleen Dickens have directed any activities at the state of New Jersey such that exercise of specific jurisdiction over them is warranted here.  Neither is a shareholder or otherwise directly related to Caliber Auto Transfer.  They were among the shareholders of Caliber Holdings.  However, the Plaintiffs have not described any conduct that either Ashley or Colleen Dickens directed towards New Jersey in their capacities as shareholders of Caliber Holdings.  The Plaintiffs even conceded in their pleadings that "the Corporate Defendants were operated exclusively by Jacquelyn Hildebrand, Samuel Hildebrand and Boyd Dickens…[t]he remaining

officers and directors of each Corporate Defendant performed little or no services and contributed nothing to the management and/or operation of these entities." (Am. Compl. ¶ 171.) Even if Caliber Holdings directed activities at New Jersey, that would not be enough alone to automatically submit its shareholders to jurisdiction in the forum state. The <u>RCS Transportation</u> case cited by Plaintiffs would not even support such a broad assertion of personal jurisdiction. In <u>RCS Transportation</u>, the district court found that Caliber Management and Boyd Dickens both played a direct role in the business dealings in the forum state and in the specific conduct relevant to the suit that had had an effect in the forum state. The Court may not assert personal jurisdiction over Ashley and Colleen Dickens in this matter.

Lauren Huang and Jacob Hildebrand had a more direct relationship with Caliber Auto Transfer, but as their affidavits assert, and the Plaintiffs have not refuted, they had no direct involvement in the activities that caused the injuries in this suit. Even as shareholders, and in the case of Jacob Hildebrand, also as a director of Caliber Auto Transfer, they "performed little or no services and contributed nothing to the management and/or operation of" Caliber Auto Transfer. (Am. Compl. ¶ 171.) For the same reasons described above, the Court cannot exercise specific jurisdiction over Lauren Huang or Jacob Hildebrand if neither participated in the activities alleged to have caused the Plaintiffs' injuries.

Lauren is additionally an employee of Caliber Management (and previously was employed by its predecessor company, Benrelle). The Supreme Court has explained that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him….[e]ach defendant's contacts with the forum state must be assessed individually." <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 781 n.13 (1984) (internal citations omitted). As an employee of Caliber Management, Lauren Huang served as an

Administrative Assistant and later, a Risk Manager for Caliber Management.  Her only contact with Caliber Auto Transfer in those capacities was processing insurance claims related to its business, including matters involving damage to shipments or incidents involving rail cars.  She was not involved in any matters related to the labor relations, collective bargaining, or pension plan contributions of Caliber Auto Transfer.  The Court cannot assert specific jurisdiction over Lauren Huang or Jacob Hildebrand in this matter because neither has sufficient contacts with New Jersey or involvement in the activities alleged to have caused the specific injuries alleged in this case.

## III.  CONCLUSION

For the foregoing reasons, the motion to dismiss the Complaint is granted in part and denied in part.  The Court does have subject matter jurisdiction over the Plaintiffs' LMRA and ERISA claims, which allege direct liability for the underlying violations, and over the control group and avoid and evade claims, which the Court finds are sufficient to pass the Rule 12(b)(6) motion.  The Court will exercise supplemental jurisdiction over the claims involving the Individual Defendants.  The Defendants' motion to dismiss is granted for all claims against Caliber Auto Transfer with prejudice, and for all claims against Ashley Dickens, Colleen Dickens, Jacob Hildebrand, and Lauren Huang, without prejudice; the claims against Caliber Auto Transfer are dismissed with prejudice under the doctrine of claim preclusion, and the claims against the four individual defendants named above are dismissed because the Court finds that it lacks personal jurisdiction over them.

The Defendants' motion to dismiss is denied as to all claims against Caliber Management, Inc., Caliber Holdings, Inc., Caliber Auto Transfer of Ohio, Inc., Caliber Auto Technical Group, Inc., Benrelle Management, Inc., Caliber Auto Transfer of St. Louis, Inc.,

Caliber Auto Transfer of Missouri, Inc., Caliber Auto Transfer of Mira Loma, Inc., Caliber Auto

Transfer of Detroit, Inc., CAT Drive-A-Way, Inc., Caliber Quality, Inc., Caliber Intermodal, Inc.,

Competitive Auto Ramp Services, Inc., National Switching, Inc., Caliber Mechanical Prepping,

Inc., Facility Maintenance Services, Inc., Chesapeake Auto Terminal, Inc., Precar LLC, Caliber

Mixing Center, Inc., Chesapeake Auto Transfer, Inc., Texas Temporary Staffing, Inc., DMC

Auto Transfer of Chicago, Inc., Caliber KC Mixing Center, Inc., Samuel Hildebrand, Jacquelyn

Hildebrand, and Boyd Dickens.

     The Court will enter an order implementing this opinion.


                      **s/ Dickinson R. Debevoise**
                      DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: June 11, 2010