Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **The Board of Trustees of the Trucking Employees of North Jersey Welfare Fund, Inc., et al.,** | **Civil Action No. 09-6447 (DRD) (MAS)** |
| **Plaintiffs,** | **OPINION AND ORDER** |
| **v.** | |
| **Caliber Auto Transfer, Inc., et al.,** | |
| **Defendants.** | |

**SHIPP, Michael A., U.S.M.J.**

**THIS MATTER** comes before the Court on an informal application filed by Defendants Samuel Dean Hildebrand, Jacqueline Hildebrand and Boyd Dickens (collectively "Defendants") and non-parties Jacob Hildebrand and Lauren Huang ("Non-Parties") to quash or modify the third-party subpoena *duces tecum* directed to Bank of America, N.A. ("Bank of America") dated January 25, 2011 ("Subpoena"); or, in the alternative, for the entry of a protective order preventing Bank of America from complying with the subpoena pursuant to Federal Rules of Civil Procedure 26 and 45. (Docket Entry Number ("Doc. No.") 60 ("Defs.' Moving Br.").) Plaintiffs the Board of Trustees of the Trucking Employees of North Jersey Welfare Fund, Inc. and Local 560, an affiliate of the International Brotherhood of Teamsters (collectively "Plaintiffs"), oppose the application. (Doc. No. 63) ("Pls.' Opp'n Br.").)

For the reasons discussed below, Defendants' informal application to quash or modify the Subpoena is granted; and Defendants' application for a protective order is granted in part, and denied in part.

I. **BACKGROUND**

Plaintiffs served the Subpoena via certified mail upon Bank of America, Legal Processing Department, Mail Code FL6-001-02-11, Ft. Lauderdale, Florida 33309. (Doc. No. 60-1 ("Subpoena").) The Subpoena directed Bank of America to produce various financial documents relating to the Defendants and Non-Parties for the period between January 1, 1999 to the present. (*Id.*) In addition, the Subpoena directed "a person or person(s) [from Bank of America] knowledgeable of financing arrangements and transactions" with the Defendants and Non-Parties to appear on March 3, 2011 at the offices of Cohen, Leder, Montalbano & Grossman, LLC at 1700 Galloping Hill Rd., Kenilworth, New Jersey 07033. (*Id.*)

II. **LEGAL STANDARD & ANALYSIS**

A. **Quashing and/or Modification of a Subpoena**

Federal Rule of Civil Procedure 45 provides that a subpoena for "production or inspection, if separate from a subpoena commanding a person's attendance, [must issue] from the court for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(c). Notably, a subpoena may be served at any location that is:

> (A) within the district of the issuing court;
>
> (B) outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection;
>
> (C) within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial, production, or inspection; or
>
> (D) authorized by the Court on motion and for good cause, if a federal statute so provides.

Fed. R. Civ. P. 45(b)(2). Rule 45 further provides that a subpoena demanding an appearance for a deposition must issue "from the court for the district where the deposition is to be taken,"

2

although, even where properly issued, "[o]n timely motion, the issuing court must quash or modify a subpoena that . . . requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(3)(A)(ii). Moreover, the Court must quash or modify a subpoena that seeks the "disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv). Importantly, on a motion to quash a subpoena that demands both the production of documents and a person's attendance at a deposition, as in this matter, a court may judge "the propriety of the production subpoena . . . independently" if it first "quashe[s] the deposition subpoena pursuant to Rule 45(a)(2)(c)." *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, No. 08-80897, 2010 U.S. Dist. LEXIS 3774, at *7 (D. Del. Jan. 19, 2010).

Initially, while a subpoenaed third party undoubtedly retains the right to file a motion to quash the subpoena, a party whose banking records are subpoenaed through a third-party financial institution also has standing to challenge the subpoena. *DIRECTTV, Inc. v. Richards*, No. 03-5606, 2005 WL 1514187, at *1 (D.N.J. June 27, 2005); *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) ("Personal rights claimed with respect to bank account records, give a party sufficient standing to challenge a third party subpoena served upon financial institutions holding such information.").

B. <u>Motion for a Protective Order</u>

Under Federal Rule of Civil Procedure 26(b), a court may compel discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action, provided that the Court finds good cause. In determining good cause, courts in this District interpret Federal Rule of Civil Procedure 26(b) liberally, tending to create a broad vista for discovery. *Tele-Radio Sys. Ltd.*

3

*v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The party seeking discovery bears the burden of "showing that the information sought is relevant to the subject matter of the action and may lead to [the production of] admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 1990); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 105 (D.N.J. 1990). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Indeed, discovery may encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Kopacz v. Del. River & Bay Auth.*, 225 F.R.D. 494, 496 (D.N.J. 2004) (citing *Caver*, 192 F.R.D. at 159).

While the scope of discovery may be broad, it is not boundless. When the burden of a discovery request is likely to outweigh the benefits, Federal Rule of Civil Procedure 26(b)(2)(C) vests the District Court with the authority to limit a party's pursuit of otherwise discoverable information. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Accordingly, a discovery request may be denied if this Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the discovery after assessing the following factors: (i) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery;" and (iii) "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

Yet another method that this Court may undertake in order to limit the scope of discovery is to issue a protective order pursuant to Federal Rule of Civil Procedure 26(c). Upon a finding

of good cause, this Court may issue a protective order for purposes of "protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A protective order may include instructions "(A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for the disclosure; [and/or] . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Id.* To determine whether there is good cause, courts may consider, among other factors, "whether disclosure will violate any privacy interests." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). Upon demonstration that good cause exists, this Court must undertake a balancing test between the requesting party's need for the information against the injury that may result if uncontrolled disclosure is granted. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994).

### III.     LEGAL DISCUSSION

Here, Defendants challenge Plaintiffs' Subpoena on various grounds, including lack of relevancy and overly broad grounds. As a threshold matter, however, Defendants contend that the Subpoena violates Rule 45 because it was served outside of New Jersey and over 100 miles from the place specified for the deposition of Bank of America's representative(s), i.e., Plaintiffs' counsel's New Jersey office. (Defs.' Moving Br. 1.) In addition, to Defendants' knowledge, any Bank of America representative capable of being deposed pursuant to the Subpoena would need to travel from Baltimore, Maryland, which is approximately 175 miles from the deposition location in New Jersey. (*Id.* at 2-3.) As such, Defendants argue that failure to quash the Subpoena would violate Rule 45 by requiring a representative to travel over 100 miles to appear in New Jersey. (*Id.*)

Defendants further argue that the Subpoena should be quashed or modified, or a protective order should be entered to protect Defendants' and Non-Parties' private and personal financial information. (*Id.* at 3-4.) Defendants argue that, although financial information may not be protected by an absolute privilege, the minimal relevancy of the requested financial information is outweighed by Defendants' and Non-Parties' privacy rights and concerns. (*Id.* at 3.) According to Defendants, because the Complaint pertains only to a piercing the corporate veil theory, the requested financial information, which was submitted to Bank of America for purposes of "underwriting personal guarantees of loans and credit arrangements, bears absolutely no relation to the claims or defenses in this case and has no probative value." (*Id.* at 3-4.) All the requested, relevant information may be obtained from non-party Caliber Auto Transfer, Inc.'s books and records, which have been produced. (*Id.* at 4.) Defendants and Non-Parties argue that the broad span of the Subpoena, which requests twelve years worth of financial information, is burdensome, irrelevant and outweighed by privacy concerns. (*Id.*) Alternatively, Defendants and Non-Parties argue that a protective order should be entered to preclude or limit Bank of America from disclosing the requested financial information. (*Id.*)

In response, Plaintiffs' counsel notes that Bank of America directed Plaintiffs to serve the Subpoena directly on Bank of America's central legal processing department in Ft. Lauderdale, Florida. (Pls.' Opp'n Br. 1.) Thus, Plaintiffs' argue that any objection to the form of service of the Subpoena must be made by Bank of America, as Defendants and Non-Parties do not have standing to challenge the same. (*Id.*) As for any irrelevancy claims, Plaintiffs vehemently disagree, asserting that they requested the information for individuals who "are either Officers, Directors, employees, shareholders of the corporate Defendants in this matter and in most cases some combination of these roles." (*Id.*) According to Plaintiffs, the information being requested

6

is relevant because Plaintiffs seek to hold the individual Defendants personally, jointly and severally liable under their corporate veil piercing claim. (*Id.* at 1-2.)

As for any privacy concerns, Plaintiffs argue that this is a non-issue in light of the Discovery Confidentiality Order currently in place, and because the relevancy of the documents outweighs any intrusions of privacy. (*Id.* at 2.) As an example, Plaintiffs argue that the requested information is relevant because in the Sixth Count of the Complaint regarding single employer/alter-ego liability, Plaintiffs allege that Defendants failed to observe corporate formalities, siphoned funds through dominate officers and/or directors and used a corporate form as a mere façade for the dominant shareholders. (*Id.*) Thus, Plaintiffs assert that financial information concerning "banking and other financial transactions involving the flow of cash and transfers of such amounts among and between various corporate Defendants and other individuals [sic] Defendants in this matter will provide the most basic and probative evidence demonstrating" the occurrence of the aforementioned allegations. (*Id.*) As Plaintiffs also allege "avoid and evade" liability against various Defendants, as well as "sham transactions" allegations against the individual Defendants, Plaintiffs assert the requested information is relevant and probative. (*Id.* at 2-3.)

Regarding Defendants overly broad assertions, Plaintiffs argue that Defendants are mistaken. (*Id.* at 3.) While Plaintiffs request information from 1999 to the present, they assert that although they request information that postdates the date the underlying withdrawal liability arose, the information is relevant to their "avoid and evade" Count. (*Id.*) Specifically, Plaintiffs argue that "transfers of funds to and from Caliber Auto by various individual Defendants, as well as monies transferred out of various corporate Defendants' account to those of individual Defendants, would be probative on the" avoid and evade allegations. (*Id.*) Likewise, Plaintiffs

7

argue that Defendants unduly burdensome arguments fail, because the Subpoena only seeks the production of documents from Bank of America and, thus, any burden resulting from the Subpoena will be borne by Bank of America. (*Id.*)

Here, the Court initially finds that, contrary to Plaintiffs' assertion, Defendant and Non-Parties have standing to challenge the Subpoena, since Plaintiffs seek their personal, individual financial records. Additionally, this Court finds that the Subpoena violates Rule 45, as it was served well outside of this Court's subpoena issuance jurisdiction. Regardless of whether Plaintiffs and Bank of America agreed to have the Subpoena served to a Florida address, the Federal Rules of Civil Procedure clearly limit this Court's jurisdiction to service within the State of New Jersey or service outside this District, provided that it is within 100 miles of the location of any noticed deposition, production or inspection. As it is the understanding of the Court that any Bank of America witness capable of responding to the Subpoena resides in Baltimore, Maryland, if not Florida, clearly the Subpoena must be quashed under Federal Rule of Civil Procedure 45(c)(3)(A), since it requires Bank of America to produce witnesses at Plaintiffs' counsel's office in Kenilworth, New Jersey. While the Court, upon motion and a finding of good cause may permit otherwise if permitted under a federal statute, the Court does not find good cause to permit the Subpoena to proceed as issued.

Additionally, Plaintiffs required Bank of America to produce persons with knowledge at Plaintiffs' counsel's office in Kenilworth, New Jersey. Thus, the deposition aspect of the Subpoena must be quashed since Plaintiffs made no attempt to refute Defendants' contention that any Bank of America representative would have to travel, at minimum, over 100 miles from Baltimore, Maryland to Kenilworth, New Jersey in order to be present at Plaintiffs' counsel's office. However, to the extent that Plaintiffs are aware of Bank of America representative(s)

with knowledge as defined in the Subpoena who are located within 100 miles of Kenilworth, New Jersey, Plaintiffs may re-serve the Subpoena, curing the defects noted above.

Finally, while this Court finds that it is permitted to require in-jurisdiction service to produce out-of-state documents in some circumstances, the Subpoena at issue does not qualify. *See Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 412 (3d Cir. 2004). Here, the Subpoena is not directed to a person or entity in this Court's jurisdiction, which may permit access to out-of-state documents.

Based on the aforementioned reasons, the Court finds good cause to grant Defendants' application to quash the Subpoena. However, while fact discovery is closed, the Court shall permit Plaintiffs to re-serve a subpoena upon a Bank of America location within this Court's subpoena enforcement jurisdiction or, alternatively, issuing a subpoena from a Florida court that complies with Federal Rule of Civil Procedure 45's requirements. However, because Plaintiffs may re-serve a proper subpoena, the Court finds it prudent to address Defendants' request to modify the Subpoena and/or for issuance of a protective order, in order to provide guidance to Plaintiffs.

To the extent that Plaintiffs seek financial information pertaining to Non-Parties' accounts with Bank of America, the Court finds that any such information falls well outside the scope of relevancy for Plaintiffs' claims. While Plaintiffs note that the Seventh and Ninth Counts of their complaint allege veil-piercing and "avoid and evade" liability, respectively, Plaintiffs have made no showing as to how the Non-Parties' records with Bank of America are relevant to their claims. As the Non-Parties' bank records consist of private financial information, Plaintiffs have not shown any connection between those records and Plaintiffs' claims that would justify an intrusion into the privacy of the Non-Parties' finances for the past

twelve (12) years. In the deposition section of their Subpoena, Plaintiffs demand "[a] person or person(s) knowledgeable of financing arrangements and transactions, both historic and current[.]" (Subpoena 2.) As to document production, the Subpoena demands, among other things, essentially all loan-related documents. (*Id.* at 3.) Given the breadth of Plaintiffs' demands and their failure to establish the relevance of the Non-Parties' financial information, the Court finds good cause to issue a protective order to preclude Plaintiffs from burdening the Non-Parties with such an intrusive and irrelevant demand. Accordingly, a protective order is hereby entered to prevent Bank of America from producing the Non-Parties' financial information.

The Subpoena rests on different footing, however, with respect to named Defendants Samuel Dean Hildebrand, Jacqueline Hildebrand and Boyd Dickens. Initially, the Court recognizes good cause to partially protect these individuals' private financial information. After balancing the burden of production versus the potential benefits to Plaintiffs, the Court is not persuaded that a protective order should issue to protect Defendants' records in their entirety.

Defendants' personal records are relevant to Plaintiffs' Sixth, Seventh and Ninth Counts, which rest on claims alleging single employer/alter ego, veil-piercing and "avoid and evade" liability. Thus, even if, as Defendants contend, the Sixth and Ninth Counts primarily involve allegations concerning corporate accounts and not Defendants' personal financial information, the Seventh Count on its own warrants the enforcement of the Subpoena insofar as it seeks testimony and documents relating to Plaintiffs' veil piercing claim. Importantly, in a case involving allegations of commingling of personal accounts with corporate accounts, as here, it would be improper during the discovery stage to preclude a party from seeking personal financial information that may establish elements to Plaintiffs' claims. Given the Third Circuit's liberal

approach to granting discovery, Defendants' argument that their financial information has no bearing on the claims in this matter is unavailing.

For similar reasons, the Court is not convinced that all of the information demanded of Bank of America regarding the named Defendants can be obtained through the corporate defendants, which have not objected to the Subpoena. To the contrary, the information sought regarding Defendants' Bank of America records "may result in information that could verify or disprove the existence of transactions through accounts other than those belonging to the [corporate defendants], and consequently whether any" commingling of assets or other elements of Plaintiffs' claims are present. *See Schmulovich*, 2007 WL 2362598, at *3.

Notwithstanding the above, the Court finds that Plaintiffs' Subpoena is overly broad as it pertains to Defendants' personal financial information retained by Bank of America. The specific factual assertions in Plaintiffs' Sixth Count, i.e., single employer/alter ego, concern transactions made no earlier than 2008. In addition, the Subpoena, as it relates to all counts, does not distinguish between information relating to Plaintiffs' claims and information relating to Defendants' personal financial information that has no relevance to this matter. By way of example, the Subpoena demands, without limitation, "Promissory Note(s) and Amendments." (Subpoena 3.) Finally, the Subpoena demands financial information for the past twelve (12) years without any other temporal restrictions. (*Id.*) The Court is not persuaded that the demands in the Subpoena should be permitted for such a long period of time, but finds that Plaintiffs have provided good cause for the discovery of documents relating to the past seven (7) years.

Having considered the broad nature of Plaintiffs' request, substantively and temporally, and having determined that the Subpoena is overly broad as drafted, particularly given the sensitive nature of the financial information demanded. As to relevancy, the Court finds that

11

only those documents that relate to transactions concerning both the named Defendants and the corporate entities at issue in this case are relevant. Thus, in the event Plaintiffs re-serve a subpoena curing the defects expressed above, the Court finds that the issuance of a protective order is warranted to prevent Bank of America from disclosing any non-relevant information and/or any records that are dated more than seven (7) years ago.

### III. CONCLUSION

Based on the foregoing, and for good cause shown,

IT IS on this **30th** day of **June** 2011,

1. Defendants' informal application to quash Plaintiffs' January 25, 2011 subpoena served upon Bank of America, Legal Processing Department, Mail Code FL6-001-02-11, Ft. Lauderdale, Florida 33309 is GRANTED.

2. In the event Plaintiffs serve a proper subpoena, a protective order is hereby entered preventing Bank of America from disclosing financial information concerning non-parties Jacob Hildebrand and Lauren Huang.

3. In the event Plaintiffs serve a proper subpoena, Defendants' informal application for a protective order to prevent Bank of America from disclosing financial information concerning named defendants Samuel Dean Hildebrand, Jacqueline Hildebrand and Boyd Dickens is GRANTED in part, and DENIED in part, as follows:

    a. On a properly issued and served subpoena, Bank of America shall produce only those portions of the named Defendants' financial information that pertains to transactions between Defendants and the party and non-party corporate entities involved in this matter, including but not limited to

    Caliber Auto Transfer, Inc., Caliber Management, Inc. and Caliber Holdings, Inc.

b. On a properly issued and served subpoena, Bank of American shall produce only those portions of the named Defendants' financial information that relate to the past seven (7) years.

          _/s/ Michael A. Shipp_
          **MICHAEL A. SHIPP**
          **UNITED STATES MAGISTRATE JUDGE**

13